MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:        2026 ME 56
Docket:          BCD-25-434
Argued:          May 6, 2026
Decided:         July 7, 2026

Panel:           STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, LIPEZ, and TAUB, JJ.

MADELON BROGDON

v.

TOWN OF TREMONT et al.

CONNORS, J.

[¶1]  Theodore Kleinman et al. ("Intervenors")[1] appeal from an order entered in the Business and Consumer Docket (BCD) (*Duddy, J.*) vacating the Tremont Planning Board's denial of Madelon Brogdon's application to construct a campground on her property and remanding the matter to the Board with instructions to approve Brogdon's application and to direct the Code Enforcement Officer (CEO) to issue Brogdon a permit to use an existing way on the property to access the campground.  The Intervenors argue that, in vacating the Board's decision, the court impermissibly substituted its judgment for that of the Board and that, based on the record before it, the Board did and

_____

[1]  The Intervenors are Theodore Kleinman, Danine Welsh, Robert Welsh, James Coffman, and Laura Levin, all of whom are owners of property in Tremont, Maine.

could reasonably conclude that Brogdon failed to meet her burden to show that the proposed use of her land conformed with the Tremont Land Use Ordinance ("LUO"). We vacate the decision entered in the BCD and remand with instructions to affirm the Board's denial of Brogdon's application.

## I. BACKGROUND

[¶2] The following facts are supported by evidence in the record. M.R. Civ. P. 80B(f); *Raposa v. Town of York*, 2020 ME 72, ¶ 2, 234 A.3d 206.

**A.    Brogdon seeks to build a campground in the Residential-Business zone and to use an existing way running through the Commercial Fishery/Maritime Activity zone to an existing residence to access the campground.**

[¶3] Brogdon owns approximately eighteen acres of land in the Town of Tremont. On the front portion of the property, which lies within the Commercial Fishery/Maritime Activity (CFMA) zone, there is a three-story building that served as an inn until 2001 and thereafter functioned as a single-family residence. The rear portion of Brogdon's property is undeveloped and located in the Residential-Business (RB) zone. Brogdon seeks to establish a small campground ("Pointy Head Campground") on the rear portion of the property. She proposes providing access to the campground via an existing way that leads to the residence and crosses the portion of her property in the CFMA zone. Although a campground is a permitted use in the RB zone, *see*

Tremont, Me., Land Use Ordinance Table 1, Line 23 (May 5, 2021), the issue is the campground access through the CFMA zone.

**B.** **The relevant provisions in the LUO prohibit "driveways" in the CFMA zone but allow for traffic on existing "roads and trails" in all zones.**

[¶4]  The following substantive provisions in the LUO are most relevant to this dispute:[2]

- The LUO expressly prohibits "[o]ne and two family residential [structures and uses], including driveways" in the CFMA zone, but permits "[m]otorized vehicular traffic on existing roads and trails" in all zones;

- The LUO also allows "[u]ses similar to allowed uses" within the CFMA zone with the approval of the CEO;

- The LUO defines "driveway" as "[a] vehicular access-way less than five hundred feet (500') in length serving two (2) single-family dwellings or one (1) two-(2) family dwelling, or less";

- The LUO defines "road" as "a route or track consisting of a bed of exposed mineral soil, gravel, asphalt, or other surfacing material constructed for or created by the repeated passage of motorized vehicles, excluding a driveway as defined";

- The LUO prohibits "[e]xpansions of non-conforming uses" subject to an exception for residential uses with permission from the Board;

---

[2]  We note that the Tremont Site Plan Review Ordinance is also applicable to Brogdon's application.  The requirement that Brogdon's project contain an adequate access way is derived from provisions of the Site Plan Review Ordinance. Tremont, Me., Site Plan Review Ordinance Art. IX(C) (May 14, 2019).  The Board adopted the LUO's definitions of "road" and "trail" because, as the Board noted, the LUO contains the only definitions of those terms and thus the Site Plan Review Ordinance "contains no conflicting definition."

4

- The LUO permits road construction in the CMFA zone only with Board approval and only for "[f]unctionally water dependent uses and uses accessory to such water dependent uses"; and

- Although the LUO does not define the term "trail," it provides that terms not defined in the LUO "shall be defined according to the latest version of Merriam-Webster's Collegiate Dictionary."[3]

Tremont, Me., Land Use Ordinance Table 1, Lines 2, 13(A), 24, and 30, Art. VII & Art. XI (May 5, 2021).

## C.   The court remanded the Board's first denial of Brogdon's application for further findings.

[¶5]  In 2020, Brogdon submitted to the Board a site plan application for the Pointy Head Campground.[4]   The Intervenors, whose properties abut Brogdon's property, submitted a memo to the Board addressing various issues relating to the application.   The Board denied the application in September 2020, citing, inter alia, issues relating to site access.

[¶6]   In 2021, Brogdon submitted an after-the-fact application for a building permit for the unpermitted structures and the unpermitted tent

---

[3] The latest version of that dictionary at the time of the Board's decision was the eleventh edition, which defined a trail as "(1): a track made by passage esp. through a wilderness (2): a marked or established path or route esp. through a forest or mountainous region."  *Trail*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003).

[4] It appears that Brogdon's application was at least partly prompted by a Notice of Violation issued by the CEO for constructing three unpermitted structures and an unpermitted tent platform on her property.

platform, identifying the access way as a "driveway" on the accompanying site plan. The CEO granted the permit.

[¶7] In February 2022, the Board reviewed a new application for the Pointy Head Campground. The Board denied the application on May 23, 2023, concluding that the proposed access way across the CMFA zone would constitute the prohibited expansion of a nonconforming use of the property. Brogdon appealed the denial to the Tremont Appeals Board, which denied the appeal, concluding that the Board had not erred.[5] *See* Tremont, Me., Board of Appeals Ordinance § V(A)(5) (May 13, 2024).

[¶8] Brogdon appealed to the Superior Court and the matter was transferred to the BCD. In July 2024, the court remanded the matter back to the Board, concluding that the Board had not issued findings sufficient for judicial review, and specifically directing the Board to issue findings as to whether the existing access way was a road, trail, or driveway under the LUO. The court stated that if the way constituted a road or trail, it could be used as an access way, but if it was a driveway, it constituted a nonconforming use in the CMFA

---

[5] The Board of Appeals' review of the Planning Board's decision is not de novo and, as per the relevant ordinance, the Board of Appeals may overturn the Planning Board's decision only if "the decision . . . was clearly contrary to the provisions of the Ordinance under which appeal is taken, or is not supported by substantial evidence on the record." Tremont, Me., Board of Appeals Ordinance § X(E)(2) (May 13, 2024).

6

zone, for which expansion was prohibited. The court left the Board to decide whether to take new evidence. Pursuant to Brogdon's unopposed motion, the court subsequently altered its judgment to include a provision stating that following the Board's decision on remand, if Brogdon chose to appeal, she could bypass the Appeals Board and appeal directly to court.[6]

**D.      On remand, the Board issued new findings and affirmed its denial of Brogdon's application.**

[¶9]  The Board held a hearing on January 14, 2025, at which Brogdon and the Intervenors were represented by counsel. At the hearing, counsel for Brogdon argued that the Board should consider whether the proposed use of the way would constitute a "similar use" to one otherwise permitted and asserted that the way was longer than 500 feet and thus could not be considered a driveway. The attorney for the Intervenors argued that the way was longer than 500 feet only if the measurement included a parking "aisle" constructed only after the project commenced, and that the project would effectively expand the driveway into a road, which would be prohibited in the

---

[6] Although we understand why the court and parties might want to save time and resources by skipping an administrative appellate review, the electorate of the Town of Tremont voted for that appellate process, and the court should grant the circumvention of such a legislated process with reluctance and caution.

CFMA zone. After some discussion, the Board voted unanimously to accept new evidence.[7]

[¶10] At that same meeting, by a vote of three to one, the Board denied the application and issued a series of fifteen findings to be approved at the following meeting.[8] Brogdon's attorney asked the Board whether it would address the similar uses argument that he had raised, and the Board declined to do so.

[¶11] Among the Board's findings were that the way traversing the CFMA zone from the public road to the residence "serves only that residential use" and that the initial application identified the existing property use as residential. The Board also found that Brogdon's property engineer "acknowledged the existing access way to be a 'driveway' as defined by the land use ordinance"; "[t]he application's Driveway Plan . . . identified that way as an 'existing paved driveway'"; and "[i]n correspondence, [Brogdon's] counsel conceded that the existing property use is residential."

---

[7] This new evidence included, inter alia, submissions from the previous CEO and Brogdon's surveyor's sketch indicating that the way was "502'±."

[8] The Board voted to adopt the Intervenors' proposed Findings of Fact and Conclusions of Law with two alterations.

8

[¶12]  The Board noted that, although the LUO's definition of "road" is expansive, it excludes driveways, and found that the "longstanding residential driveway, that is approximately 10 feet wide, paved, and located in a developed shoreland zoning district and residential area may not be classified as a trail."

[¶13]  As a result, the Board concluded that the property was "accessed via a driveway serving a principal single-family residential structure" and that the proposed project "calls for the existing driveway's conversion, and expansion, to a road as defined."  Furthermore, the proposed way would "serve a commercial campground that is not in any way functionally water dependent."  The Board denied the application, finding that the project would require the expansion of an existing nonconforming use of the way.

**E.  On Brogdon's second appeal, the court ordered the Board to approve Brogdon's application.**

[¶14]  Brogdon timely appealed the Board's decision to the Superior Court and, pursuant to the parties' agreement, the matter was again transferred to the BCD.  The Intervenors filed an unopposed motion to intervene on February 18, 2025, which the court granted on March 13.

[¶15]  The court issued its judgment in September 2025, stating that the Board "committed two significant errors of law" by failing to consider the

length of the way "as clearly required by the LUO's definition of driveway" and by failing "to consider the issue of similar use, also clearly required by the LUO."

[¶16]  The court then stated that "it ma[de] no sense to remand the matter to the Planning Board for any reason other than to order the Planning Board to approve Brogdon's application," because the court found that it was sufficiently clear on the record that the proposed use of the way would be similar to a permitted use.  The court reversed the Board's decision and remanded the matter to the Board with instructions to approve the application and to direct the CEO to issue a permit.

[¶17]  The Intervenors filed a timely notice of appeal.  M.R. App. P. 2B(c)(1).

## II.  DISCUSSION

**A.  Although the appeal to us is interlocutory, it is ripe for review under our ministerial act exception because the court ordered approval of Brogdon's application.**

[¶18]  Under M.R. Civ. P. 80B(m), "[i]f the Superior Court remands the case for further action or proceedings by the governmental agency, the Superior Court's decision is not a final judgment."  Nonetheless, in instances where "all the substantive decisions" have been made such that all that remains is for the Board to carry out a "ministerial act" on remand, we will accept the

appeal as ripe "in the interest of judicial economy." *Rockland Plaza Realty Corp. v. City of Rockland*, 2001 ME 81, ¶ 6, 772 A.2d 256.

[¶19]  The court remanded the matter to the Board with instructions to approve Brogdon's application and to direct the CEO to issue a permit.  The court thereby left the Board only to complete a ministerial function, and we accept the appeal as ripe.

**B.     The Board's denial of Brogdon's application based on its finding that the way is a driveway is reasonable and supported.**

[¶20]   The Intervenors argue that the court improperly usurped the municipal board's authority by engaging in its own fact finding.  Whether or not the court did so, however, is, as a practical matter, immaterial to our review on appeal, because "[w]hen a Zoning Board of Appeals and the Superior Court act in their appellate capacity, we review the Planning Board's decision directly for error of law, abuse of discretion or findings not supported by substantial evidence in the record." *Adelman v. Town of Baldwin*, 2000 ME 91, ¶ 8, 750 A.2d 577 (quotation marks omitted).

[¶21]  Hence, we review the decision not of the court, but of the Board. In doing so,

> our standard of review for municipal adjudicative decisions is to give great deference to a board's findings of fact, i.e., to sustain the findings unless the evidence compels a contrary conclusion, and to

give no deference to a board's interpretation of an ordinance because such interpretation is a question of law that we review de novo. As to mixed questions of law and fact, we afford a board's ultimate characterization "substantial deference."

*Tominsky v. Town of Ogunquit*, 2023 ME 30, ¶ 22, 294 A.3d 142 (citations omitted); *see also Stiff v. Town of Belgrade*, 2024 ME 68, ¶¶ 13-14, 322 A.3d 1167 (noting that with mixed questions of law and fact, the degree of deference given varies dependent upon whether the decision is "greatly informed" by a factual determination).

[¶22] The Board denied Brogdon's application based on its finding that the way was a driveway. In response, Brogdon argues that the way is not a driveway but either a road or a trail (or both).[9] Because the nature of the way is a mixed question of law and fact, our task on appeal is to determine whether there is any competent evidence in the record to support the Board's finding under the language of the Ordinance, giving some deference to the Board.

---

[9] Brogdon also argues that the Board should have considered and ruled on her argument that use of the way, even if the Board determined that the way was not a road or trail, was similar to allowed uses. But Brogdon concedes that she never asked the CEO for approval as a similar use, and as noted *supra*, the LUO explicitly requires approval of the CEO, not the Board, for such uses. Tremont, Me., Land Use Ordinance Table 1, Line 30 (May 5, 2021). To the extent that Brogdon relies on our decision in *Your Home, Inc. v. City of Portland*, 432 A.2d 1250 (Me. 1981), she misapprehends that decision. In *Your Home*, we stated: "Any use which is similar to and no more objectionable than the uses expressly permitted in a zone, and *concerning which there is no explicit provision in the ordinance*, may not be arbitrarily and irrationally excluded from that zone, nor excluded on some ground that has no foundation in the ordinance." *Id.* at 1261 (emphasis added). Table 1 of the LUO contains an explicit provision requiring CEO approval for a similar use, which Brogdon neither requested nor obtained. Moreover, the LUO's definitions of "road," "trail," and "driveway" would appear to preclude any "similar use" argument given that driveways are prohibited from expansion in the CFMA zone.

12

[¶23] "The terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole." *Gerald v. Town of York*, 589 A.2d 1272, 1274 (Me. 1991). We give terms not otherwise defined "their common and generally accepted meaning unless indicated otherwise by their context in the ordinance." *DeSomma v. Town of Casco*, 2000 ME 113, ¶ 9, 755 A.2d 485.

**1.    The Board was not compelled to find that the way was a trail.**

[¶24] As noted above, the LUO identifies three different types of ways: trails, roads, and driveways. Although Brogdon argues that a way can be deemed both a road and a trail, viewing the LUO holistically, we disagree. Separate definitions are given to each term in the LUO definition section, and Table 1 of the LUO allows "[m]otorized vehicular traffic" on "existing roads and trails," maintaining this separation. Tremont, Me., Land Use Ordinance Table 1, Line 2 (May 5, 2021). The common and generally accepted meaning of the term "trail," as reflected in the Merriam-Webster's Dictionary definition, *see supra* n.3, suggests a less developed pathway in which the motorized traffic can include ATVs, snowmobiles, and other vehicles able to navigate unpaved terrain.

[¶25]   The way at issue here, in contrast, is paved and designed for ingress to and egress from a residence.  Hence, the Board reasonably applied the LUO by relying on the definition of "trail" in Merriam-Webster's dictionary to determine that "the longstanding residential driveway, that is approximately 10 feet wide, paved, and located in a developed shoreland zoning district and residential area may not be classified as a trail."

## 2.   The Board was not compelled to find that the way was a road.

[¶26]   In keeping with the separate definitions, the LUO definition of "road" expressly excludes driveways.  Tremont, Me., Land Use Ordinance Art. XI (May 5, 2021).  "Driveway" is defined as "[a] vehicular access-way less than five hundred feet (500') in length serving two (2) single-family dwellings or one (1) two-(2) family dwellings, or less," while a road is "a route or track consisting of a bed of exposed mineral soil, gravel, asphalt, or other surfacing material constructed for or created by the repeated passage of motorized vehicles, excluding a driveway as defined." *Id.*

[¶27]   The existing way located in the CFMA zone constituted a nonconforming use, and the Board found that the campground project would impermissibly expand that nonconforming use by converting the existing, nonconforming driveway into a road.  Consistent with the LUO's definition of

14

"driveway" and in contrast to roads serving "repeated passage of motorized vehicles," the existing way, as the Board repeatedly noted in its decision, served a single residence. The record showed that the campground project would expand the use of the way to as many as 130 daily vehicle trips and, as the Board noted, the project involved expansions and improvements of the existing way at its junction with State Route 102. The Board explicitly cited the LUO's definition of "driveway," including its reference to a length of less than 500 feet, and noted the multiple times in the record that Brogdon had identified the way as a driveway.

[¶28]  In challenging the Board's decision, Brogdon argues that the references to the way as a driveway by her engineer and on the application's "Driveway Plan" were meaningless and that the only evidence in the record upon which the Board could rely was a survey that Brogdon submitted, which she suggests indicated that the way was longer than 500 feet.

[¶29]  Under our substantial evidence test, however, the Board was free to rely on Brogdon's own assertions on her plan documents that this was a driveway. Moreover, the survey referenced by Brogdon is unclear as to where the way starts and ends and indicates that the length of the way it measured is "502±,'" i.e., plus *or minus* 502 feet. There is also record evidence indicating

that this estimate of a length of over 500 feet includes an extension of the existing way onto a grassy area for parking purposes.

[¶30]  Given this evidence, the Board's finding that the way was a driveway was a supported application of the LUO.  We also note that the Board's decision is consistent with the legislative objectives.  The CFMA zone lies within 250 feet of the shoreline, "where the existing predominant pattern of development is commercial fishing and other maritime activities and contains areas which are suitable for functionally water-dependent uses."  Tremont, Me., Land Use Ordinance Art. III(D)(4) (May 5, 2021).  The zone is devoted to water dependent uses and the LUO prohibits any road construction in the zone unless devoted to those uses.  Creating traffic on a nonconforming residential driveway to accommodate a non-water dependent, commercial use in another zone does not fulfill the goals contemplated in establishing the CMFA zone and limiting expansions of nonconforming uses.

### III.  CONCLUSION

[¶31]  Whether the court did or did not engage in impermissible fact finding is immaterial because we review directly the decision of the Board, not that of the court.  The Board found, primarily citing Brogdon's own representations, that the existing, nonconforming, residential way located

within the CFMA zone was a driveway and, therefore, could not be improved, expanded, and converted into a road to serve a commercial non-water dependent use. Brogdon had the burden of persuasion to provide evidence compelling the Board to find that the existing way was a road, not a driveway, and she did not do so. Brogdon submitted a survey that only indicated that the length of the way depicted on the survey was 502 feet "plus or minus," and competent evidence in the record indicated that this length did not represent the way as it existed before extending improvements to parking facilities for Brogdon's proposed commercial use.

The entry is:

> Judgment vacated. Remanded for entry of a judgment affirming the decision of the Planning Board.

---

Daniel A. Pileggi, Esq. (orally), Acadia Law Group, LLC, Ellsworth, for appellants Theodore Kleinman, James Coffman, Danine Welsh, Robert Welsh, and Laura Levin

Edmond J. Bearor, Esq. (orally), and Jonathan P. Hunter, Esq., Rudman Winchell, Bangor, for appellee Madelon Brogdon

Business and Consumer Docket docket number APP-2025-7
FOR CLERK REFERENCE ONLY